UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| GREENFIELD MILLS, INC., et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Cause No. 1:00 CV 0219 |
| ) | |
| JOHN GOSS, et al. ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

Before the court is Plaintiffs' Motion for Summary Judgment; Plaintiff Gene Lewis's Motion for Summary Judgment, Defendants' Motion for Summary Judgment, Plaintiffs' Motion to Strike All Summary Judgment Filings by Defendants, Plaintiffs' Motion to Strike Inadmissible Expert Opinion, Plaintiffs' Amended Motion to Strike and Plaintiffs' Motion for Order to Show Cause.[1]

For the following reasons, Plaintiffs' Motion for Summary Judgment, Plaintiff Gene Lewis' Motion for Summary Judgment, and Plaintiffs' Motion for Order to Show Cause will be GRANTED. Defendants' Motion for Summary Judgment, Plaintiffs' Motion to Strike All Summary Judgment Filings by Defendants, Plaintiffs' Motion to Strike Inadmissible Expert Opinion and Plaintiffs' Amended Motion to Strike will be DENIED.

## Background

This case has a lengthy history, all of which need not be recounted herein. The factual

---

[1] Since the filing of these motions, the court held numerous telephonic conferences and accepted supplemental filings from the parties. Telephonic conferences were conducted on April 27, 2005 and June 8, 2005. Additional filings were made by Plaintiffs on April 28, 2005, May 9, 2005, June 9, 2005, and June 27, 2005. Defendants filed additional documents on May 9, 2005 and June 27, 2005. Each of these filings has been thoroughly reviewed as have the briefs on the motions set forth in the main text.

1

background is fully set forth in an opinion from the Seventh Circuit Court of Appeals, *Greenfield Mills v. Macklin*, 361 F.3d 934 (7th Cir. 2004).  For purposes of the present motions, it suffices to say that the Plaintiffs are riparian landowners along a five-mile portion of the Fawn River that begins at Orland Dam and ends at Greenfield Millpond.[2]   The present dispute arose on May 18, 1998, after the Defendants drained a supply pond into the Fawn River and, in the process, flushed sediment from the supply pond into the river.  According to the Plaintiffs, the result of this process was to deposit massive amounts of sediment into the Fawn River thereby destroying the aquatic life and altering the water quality of the river.  Thus, the Plaintiffs brought suit under the Citizen Suit provision of the Clean Water Act ("CWA"), 33 U.S.C. §1251 alleging that the Defendants illegally deposited dredge and fill  materials in violation of 33 U.S.C. §1344 (hereafter "§404")[3] into the Fawn River without a proper permit.

During the original proceedings in this court, the undersigned granted summary judgment to the Defendants on the CWA claims under the theory that the activities causing them to drain the supply pond were covered by a maintenance exemption in the CWA and that no "recapture"[4] had

---

[2] The Fawn River runs through the Fawn River State Fish Hatchery ("Hatchery").  The river has been dammed (Orland Dam) near the Hatchery to form a supply pond.  When the Orland Dam is opened, the water flows from the supply pond down the Fawn River and, five miles later, reaches the Greenfield Millpond. The Greenfield MillPond is owned by Plaintiff Greenfield Mills. (Docket #204, p. 6).  The by-pass pool is downstream of the Orland Dam.  (*Id*.).  The Lewis' Plaintiffs farm property begins below the Orland Dam and, it appears, includes the by-pass pool.

[3] Plaintiffs also originally claimed a violation of 33 U.S.C. §1342 ("§402") which requires a permit for the discharge of pollutants.  The Seventh Circuit foreclosed consideration of this claim on appeal  indicating that the proper permitting scheme to be applied in this case was §404 related to dredging and filling.

[4] "Recapture" is a term of art in the CWA and refers to 33 U.S.C. §1344(f)(2), which provides:

Any discharge of dredged or fill material into the navigable waters incidental to any activity having as its purpose bringing an area of the navigable waters into a use to which it was not previously subject, where the flow or circulation of navigable waters may be

2

occurred. On appeal, the Seventh Circuit reversed the grant of summary judgment, and concluded, as a matter of law, that the Defendants were subject to the permitting requirement of §404 because their actions of May 18,1998 constituted the addition of dredged materials into the Fawn River. *Greenfield Mills*, 361 F.3d at 950. What the Seventh Circuit did not resolve, however, was whether any exemptions to the permitting requirement applied. Rather, the court concluded that issues of material fact existed as to whether the Defendants' activities qualified for the maintenance exemption and, if so, whether the activities were recaptured. *See Order* dated June 29, 2004 (setting forth factual issues to be tried based upon the Seventh Circuit's opinion).

Upon remand to this court, the parties sought, and the court granted, extended discovery and the opportunity to file renewed summary judgment motions. The parties' motions are now on file and thus, the court turns now to those motions and the accompanying motions to strike.

## Discussion

As indicated at the outset, the Plaintiffs have filed two summary judgment motions directed at liability, both of which are substantially identical in argument and content.[5] The Defendants' motion for summary judgment raises a threshold issue of whether this court has subject matter jurisdiction. Because "no court may decide a case without subject matter jurisdiction," *Weaver v. Hollywood Casino-Aurora, Inc.*, 255 F.3d 379, 381 (7th Cir. 2001), the court turns first to an examination of this issue.

## Subject Matter Jurisdiction

---

impaired or the reach of such waters be reduced, shall be required to have a permit under this section.

[5]Because the briefs are virtually identical, the court shall refer to the filings in the singular as Plaintiffs' Motion for Summary Judgment. No distinction will be made between plaintiff Gene Lewis and the other plaintiffs.

3

The sole issue presented in the Defendants' Motion for Summary Judgment is whether Plaintiffs' claim against Defendants constitutes a continuous or ongoing violation of the CWA so as to give this court jurisdiction or whether the alleged violations are "wholly past," for which no liability may be imposed. The crux of the Defendants' motion is that since the alleged discharge of dredge and fill materials took place prior to the filing of the Complaint, *Gwaltney v. Chesapeake Bay Found.,* 484 U.S. 49 (1987), dictates that this court lacks subject matter jurisdiction. While at first blush *Gwaltney* appears to answer this question in the Defendants' favor, for the reasons below, the Court concludes otherwise.

In *Gwaltney*, the Court was presented with the issue of whether a citizen suit could be brought for wholly past violations of the CWA. Section 505 of the CWA permits citizens to commence an action "against any person ... who is alleged *to be in violation* of (A) an effluent standard or limitation...." 33 U.S.C. § 1365(a)(1) (emphasis added). The defendant in *Gwaltney* claimed that it could not be held liable under that section since it had come into compliance several weeks before the plaintiffs had initiated their suit. *Gwaltney,* 484 U.S. at 55.

The Supreme Court agreed with the defendant and held that the language "to be in violation" contained in section 505 indicated Congress's intent to permit citizen suits only for claims of continuous or intermittent violations, and not for wholly past violations. *Id.* at 59. The Court first reasoned that Congress's use of the language "to be in violation" most naturally suggested a present violation with "a reasonable likelihood that a past polluter will continue to pollute in the future." *Id.* at 57. The Court buttressed this interpretation by observing that "Congress used identical language in the citizen suit provisions of several other environmental statutes that authorize only prospective

4

relief." *Id.*[6]

"Although *Gwaltney* settled that 'wholly past' violations are not cognizable under the CWA's citizen suit provision, it offered little explanation as to when a violation ceases to be ongoing and becomes wholly past." *Wilson v. Amoco Corp.,* 33 F.Supp.2d 969, 975 (D.Wyo.1998). For this reason, Defendants assert that even under *Gwaltney*'s holding, continuing residual effects of a prior discharge do not amount to a continuing violation so as to provide this court with jurisdiction, *Aiello v. Town of Brookhaven*, 136 F.Supp.2d 81, 120 (E.D.N.Y. 2001); *Wilson,* 33 F.Supp.2d at 975. These cases, Defendants argue, support the conclusion that sediment that was released into the Fawn River prior to the filing of the complaint does not give rise to a continuing violation even if the sediment remains in the river at the time the complaint was filed. In response to this argument, Plaintiffs contend that the rationale in *Aiello* and *Wilson* does not apply to §404 dredge and fill cases such as the violation alleged in this case.

A number of cases have addressed the issue of when a violation ceases to be ongoing and, the weight of authority supports the Plaintiffs' position that where dredged materials remain, a continuing violation is established. *See e.g., Atlantic States Legal Foundation, Inc. v. Hamelin,* 182

---

[6]Among the identical provisions cited by the Court was the Clean Air Act, 42 U.S.C. § 7604; Resource Conservation and Recovery Act of 1976 ("RCRA"), 42 U.S.C. § 6972 (1982 ed. and Supp. III); Toxic Substances Control Act, 15 U.S.C. § 2619 (1982 ed. and Supp. IV). The Court also noted that Congress clearly intended to authorize only future relief since in other statutes, Congress "ha[d] demonstrated ... that it knows how to avoid this prospective implication by using language that explicitly targets wholly past violations." *Gwaltney*, 484 U.S. at 57; see also 42 U.S.C. § 6972(a)(1)(B) providing that "any person, ... including any *past or present* generator, *past or present* transporter, or *past or present* owner or operator of a treatment, storage, or disposal facility who *has contributed* or is contributing to the *past or present* handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment...."

5

F.Supp.2d 235, *248 (N.D.N.Y.,2001) (holding that continued presence of fill material in wetlands constituted a continuing violation); *Informed Citizens United, Inc. v. USX Corp.,* 36 F.Supp.2d 375, 377 (S.D.Tex.1999) (noting that several courts have found that "a violation is 'continuing' for purposes of the statute until illegally dumped fill material has been removed" (citations omitted)); *Sasser v. Administrator, United States E.P.A.,* 990 F.2d 127, 129 (4th Cir.1993) ("Each day the pollutant remains in the wetlands without a permit constitutes an additional day of violation." (citations omitted)); *United States v. Reaves,* 923 F.Supp. 1530, 1534 (M.D.Fla.1996) ( "Defendant's unpermitted discharge of dredged or fill materials into wetlands on the site is a continuing violation for as long as the fill remains." (footnote omitted)); *United States v. Cumberland Farms of Conn., Inc.,* 647 F.Supp. 1166, 1183 (D.Mass.1986) ("A day of violation constitutes ... every day Cumberland allowed illegal fill material to remain therein." (citations omitted)); *United States v. Tull,* 615 F.Supp. 610, 626 (E.D.Va.1983); *United States v. Ciampitti,* 669 F.Supp. 684, 700 (D.N.J.1987).[7]

In *North Carolina Wildlife Federation v. Woodbury,* 1989 WL 106517, *2 (E.D.N.C.1989), the court faced a similar issue as that presented in this case. There, the defendants had constructed ditches and canals in a wetland area for drainage in their planned peat mining operation, which activity involved the discharge of dredge and fill material into the area. Plaintiffs brought a citizen

---

[7] A number of cases under the RCRA also dictate that a continuing violation exists where hazardous waste remains in a body of water so long as the discharge remaining in the water is remediable. *See California v. M & P Investments,* 308 F.Supp.2d 1137, 1146 (E.D.Cal.2003), *Gache v. Town of Harrison, New York*, 813 F.Supp. 1037, 1041 (S.D.N.Y.1993) ("[I]mproperly discharged wastes which continue to exist unremediated represent a continuing violation of RCRA."); *Fallowfield Development Corp. v. Strunk,* 1990 WL 52745, *10-11 (E.D.Pa.1990) ("Because improperly disposed of hazardous waste remains a remediable threat to the environment, this Court believes that Congress intended to allow citizen suits under section 7002 of RCRA for past violations where the effects of the violation remain remediable.").

suit against the defendants alleging violations of the CWA and defendants moved for summary judgment on the ground that they had stopped their dredging and filling prior to suit, thus making the alleged violations wholly past.

The district court rejected defendants' argument that the violations were wholly past relying on the reasoning set forth in Justice Scalia's concurring opinion in *Gwaltney*. The Court held:

> Treating the failure to take remedial measures as a continuing violation is eminently reasonable. This is because it is not the physical act of discharging dredge wastes itself that leads to the injury giving rise to citizen standing, but the *consequences* of the discharge in terms of lasting environmental degradation.

*Woodbury*, 1989 WL 106517, *2.

In spite of Woodbury and the other cases to the contrary, Defendants urge application of *Aiello* to this case. In *Aiello,* the plaintiffs were individuals residing in the immediate vicinity of a former municipal landfill. They sued the town of Brookhaven under the RCRA [8] and the CWA alleging that the landfill had contaminated a creek and pond near their homes.[9] With regard to the CWA claims, the plaintiffs alleged that the Town discharged toxic and other pollutants into a

---

[8] "RCRA is a comprehensive environmental statute that governs the treatment, storage, and disposal of solid and hazardous waste." *Mehrig v. KRC W., Inc.*, 516 U.S. 479, 483 (1996).

[9] The various plaintiffs in *Aiello*, as do the plaintiffs in this case, provided testimony that:

> the creek allegedly polluted by the landfill was previously a pristine 'babbling brook,' and as 'clear as glass.' ...Rowboats, canoes and paddle boats went up and down the creek. ... However, "it started turning grey in the mid-1980s, and thereafter turned 'pure orange.' Plaintiff Thomas Aiello, who lived next to the pond beginning in 1967, testified that it looked at that time 'like a country brook,' supporting '[a]ll kinds" of wildlife, "catfish, rabbits, ducks, even raccoons, black snakes.' He believed that the color of the pond started to turn a 'golden rusty' color during the mid-1970s, but became extremely visible by 1993.

*Aiello*, 136 F.Supp.2d at 86

navigable waterway from a point source without first obtaining a permit in violation of §402.  The Town argued that it was a "past polluter" rather than a present polluter since the landfill from which the contaminants had seeped was no longer functioning.  In contrast, the plaintiffs contended that so long as contaminants were seeping from the landfill, the Town was "in violation of" §402.

In finding favorably to the Town, the *Aiello* court discussed the divide in authority as to whether the facts supported an ongoing violation:

> As explained in *Wilson,* the issue has divided the courts. On the one hand, "[s]ome courts have adopted an expansive interpretation and held that an ongoing violation exists until the risk of continued violation has been completely eradicated." *Wilson*, 33 F.Supp.2d at 975 .... On the other hand, "[o]ther courts have not been so generous, and have held both pre- and post-*Gwaltney* that 'continuing residual effects resulting from a discharge are not equivalent to a continuing discharge.' "...
>
> The Court agrees with *Wilson*...the Town should not be held liable under CWA as a past polluter for the ongoing migrating leachate plume. There is no particular warrant for assessing CWA penalties against the Town for failing to obtain a permit in contemplation that the closed landfill at some future date might leak pollutants into navigable waters. It is RCRA, rather than the CWA, that appropriately addresses liability for ongoing contamination by past polluters.

*Aiello,*136 F.Supp.2d at 121.

*Aiello* does, as Defendants point out, make a case that where residual effects of a prior discharge are what remains at the time of suit no ongoing violation can be established; yet, the Defendants here are in a different position than the defendants in *Aiello*.  Unlike in *Aiello*, the Defendants here are alleged to have violated §404 of the CWA by dredging sediment from the dam into the Fawn River.[10]  Plaintiffs allege and  Defendants cannot dispute (see *infra*), that at least 180

---

[10]But, even if the plaintiffs had alleged solely a §402 claim, the Second Circuit recently stated in *June v. Town of Westfield, New York,* 370 F.3d 255 (2d Cir. 2004), that even in cases under §402, "most courts that have addressed the question have concluded on the facts before them that the continuing presence of a pollutant constitutes a continuing discharge of the pollutant into adjacent water under the

cubic yards of sediment remain from that dredging in the five-mile stretch between the Orland Dam and the Greenfield Millpond. Thus, the violation alleged here is not only that the plaintiffs violated the dredge and fill provisions but that the *consequences* of the original dredging violation continues until the dredged material has been removed from the river.

Nonetheless, Defendants urge that to conclude that sediment remaining in the river, even now some five years after the Complaint was filed when no new deposits of dredge and fill material have occurred, would contravene the holding in *Gwaltney*. This, however, is the same argument rejected in *Woodbury*:

> Private defendants argue that interpreting failure to take remedial measures as constituting a continuing violation would emasculate the holding of *Gwaltney*. Under this argument, any past discharge that is not remedied would be subject to citizen-suit as a continuing violation, thus rendering *Gwaltney* meaningless. However, this argument fails to adequately distinguish between various types of effluent violations. For example, citizen-suits for past discharges which are not susceptible to remedial efforts, due to effective natural dissipation or dispersion, would clearly continue to be barred under *Gwaltney*. Only violations having persistent effects that are amenable to correction, would constitute continuing violations, until remedied, under *Gwaltney*. In the instant case, the characterization of the presence of dredge and fill material on the White Tail Tract as a continuing violation recognizes that the violation is still capable of correction, since plaintiffs seek injunctive relief ordering that the material be removed and the area restored. Treating private defendants' acts as a continuing violation is also supported by public policy. If citizen-suits were barred merely because any illegal ditching and drainage of a wetland tract was completed before it might reasonably be discovered, violators would have a powerful incentive to conceal their activities from public and private scrutiny--which would lead to serious problems in public and private enforcement of the Clean Water Act.

*Woodbury*, 1989 WL 106517, *2.

Having reviewed and considered the various authorities on this issue, the court believes the better course is to adopt the reasoning in *Woodbury* and follow the weight of authority. Indeed,

---

CWA."

as *Woodbury* and the cases cited therein recognize, to hold that no continuing violation exists when the very consequence of an illegal discharge is the harm, would provide no remedy to plaintiffs such as the ones in this case, where the relief sought is remediation of discharge materials from illegal dredging activities. Surely, Congress would not have meant such an outcome. Accordingly, this court concludes that a continuing violation exists in this case if, at the time of the filing of the complaint,[11] Plaintiffs can demonstrate that dredged materials remained in the river.

### A.   Does the Law of the Case Doctrine Apply to Preclude Review of Subject Matter Jurisdiction?

Plaintiffs make two arguments in an attempt to have this court conclude that the issue of jurisdiction has already been decided as a matter of law and thus, should not be revisited now. First, Plaintiffs contend that the Seventh Circuit implicitly concluded that jurisdiction existed when it decided the appeal and "once an appellate court either expressly or by necessary implication decides an issue, the decision will be binding upon all subsequent proceedings of the same case." *Matter of Memorial Estates, Inc.*, 950 F.2d 1364, 1367 (7th Cir. 1991). Plaintiffs argue that by finding, based on the undisputed evidence before it, that there was current sedimentation remaining in the river, the Seventh Circuit necessarily concluded that a continuing violation had occurred as a matter of law.

Neither the original order granting Defendants' motion for summary judgment nor Plaintiffs' appeal therefrom specifically addresses the subject matter jurisdiction issue that Plaintiffs allege falls under the law of the case doctrine. Moreover, even assuming that the Seventh

---

[11]"Ordinarily, the subject matter jurisdiction of a court is tested as of the time the action is filed and subsequent changes will not operate to divest a court of its jurisdiction once it has been properly invoked." *In re Lewis,* 398 F.3d 735, 743 (6th Cir.,2005)

Circuit implicitly decided jurisdiction, "the law-of-the-case doctrine does not foreclose reconsideration of subject matter jurisdiction." *Amen v. City of Dearborn,* 718 F.2d 789, 793-94 (6th Cir.1983); *see also Baca v. King,* 92 F.3d 1031, 1034 (10th Cir.1996) (declaring that the law of the case doctrine "is not a fixed rule that prevents a federal court from determining the question of its own subject matter jurisdiction in a given case."). Issues such as "subject matter jurisdiction" may be "particularly suitable for reconsideration," *Kennedy v. Lubar*, 273 F.3d 1293, 1299 (10th Cir. 2001) (quoting Wright & Miller § 4478, at 799 & n. 32); *Di Laura v. Power Authority of the State of New York,* 982 F.2d 73, 77 (2d Cir.1992). [12] Thus, the court does not read the Seventh Circuit's opinion as precluding review of the issue in this court.

Next, Plaintiffs urge that this court decided the subject matter jurisdiction in its original order denying Defendants' motion to dismiss. In footnote 11, the court wrote:

> The Plaintiffs have clearly *alleged* a continuing violation in their complaint. For instance, at page 30, paragraph 5 of the Complaint, Plaintiffs allege that various officials "intentionally violated and continue to violate the Clean Water Act". They further allege that the violation began in May 1998 and continues through the present. *See Complaint*, p. 30 paragraph 7. Moreover, the Plaintiffs cite various cases (not addressed by the Defendants) indicating that a violation is "continuing" until illegally dumped material is removed. *See Informed Citizens United, Inc., v. USX Corp.,* 36 F.Supp.2d 375, 377 (S.D. Texas, 1999)("Several courts in cases involving filled wetlands have found *Gwaltney* inapplicable and held that a violation is 'continuing' for purposes of the statute until illegally dumped fill material has been removed.")(citing cases).

Court's Order dated 1/26/01 (Docket #51) (emphasis added). This footnote did not, as Plaintiffs

---

[12] Further, even if this court applied the law of the case doctrine, as Plaintiffs suggest, to preclude review of subject matter jurisdiction, "a district court's adherence to law of the case cannot insulate an issue from appellate review." *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 817 (1988); *see also Liona Corp. v. PCH Assocs. (In re PCH Assocs.),* 949 F.2d 585, 593 (2d Cir.1991) ("Application of the [law of the case] doctrine at the ... district court level[ ] ... does not preclude *us* from conclusively determining the issue...."). Thus, the issue could be reopened on appeal. So, it is to the benefit of all parties that careful consideration be paid to this threshold issue.

now contend, conclusively decide the issue of whether a continuing violation had been *proven*; it concluded only that such a violation had been properly *pled*. Indeed, as the Fourth Circuit noted in *American Canoe Ass'n v. Murphy Farms, Inc.* 326 F.3d 505, 521 (4th Cir. 2003), the continuing violation allegation evolves throughout the litigation:

> As with other jurisdictional matters, the plaintiff's burden to establish an ongoing violation evolves over the course of the litigation. At the motion to dismiss stage, a plaintiff need only have pled facts sufficient to support such a finding. A plaintiff will survive summary judgment on the *Gwaltney* requirement if he can show either that there is no genuine dispute as to material fact on the issue and that the plaintiff is entitled to judgment as a matter of law or that there is a genuine factual dispute and a reasonable jury could find for the plaintiff on the issue. Finally, at trial, a plaintiff may satisfy his burden "either (1) by proving violations that continue on or after the date the complaint is filed, or (2) by adducing evidence from which a reasonable trier of fact could find a continuing likelihood of a recurrence in intermittent or sporadic violations." *Gwaltney II,* 844 F.2d at 171-72.

Given this method of proceeding, the Court's Order merely identified that the Plaintiffs pled enough to prevail on a motion to dismiss. As a jurisdictional prerequisite, Plaintiffs were only required to "allege a state of either continuous or intermittent violation--that is, a reasonable likelihood that a past polluter will continue to pollute in the future." *Gwaltney,* 484 U.S. at 57. There remains a requirement that the factual allegation be *proven* to a jury, assuming a question of fact exists on the issue. *Parker v. Scrap Metal Processors, Inc.* 386 F.3d 993, 1010 (11th Cir. 2004) ("To find the defendants liable under the CWA, the jury must have found that there was a continuing violation."). Indeed, "[b]ecause the Supreme Court has construed the Act to preclude citizen suits based on wholly past violations, Plaintiffs must prove, *as an element of their case-in-chief*, the existence of a continuous or intermittent discharge violation as of the day they filed their complaint." *Friends of Santa Fe County v. LAC Minerals, Inc*. 892 F.Supp. 1333, 1353 (D.N.M.,1995) (emphasis added); see also *Connecticut Coastal Fishermen's Ass'n v. Remington*

12

*Arms Co., Inc.* 989 F.2d 1305, 1312 (2d Cir. 1993) ("Good faith allegations, it is true, will defeat a motion to dismiss ...But once a defendant has come forward with evidence... [that] it is unlikely defendant will continue its illegal discharges--plaintiff must demonstrate more than good faith.[Plaintiff] must present instead evidence from which a factfinder could find a likelihood of continuing violations."); *Carr v. Alta Verde Indus.,* 931 F.2d 1055, 1061 (5th Cir.1991); *Atlantic States Legal Found. v. Tyson Foods, Inc.,* 897 F.2d 1128, 1134 (11th Cir.1990) (Plaintiffs "must go beyond mere allegations. Plaintiffs must be able to prove that non-compliance was ongoing at the time they filed suit...."); .  Accordingly, the court concludes that the law of the case doctrine does not preclude an examination of subject matter jurisdiction.

> **B.    Can Jurisdiction Be Established As a Matter of Law Based on the Undisputed Evidence?**

Plaintiffs next contend that subject matter jurisdiction can be established as a matter of law because the undisputed evidence demonstrates that dredged materials remain in the Fawn River even presently and thus, they were present at the time the Complaint was filed.  Plaintiffs first draw the court's attention to the record before the Court of Appeals, which is replete with lay and expert evidence from the Plaintiffs indicating that large deposits of sediment were released into the Fawn River and Greenfield Millpond by the dredging occurring on May 18, 1998. *See Greenfield Mills*, 361 F.3d at 942-944.  Next, Plaintiffs point out that Defendants' own expert report[13] (hereinafter, "the Burke Report")  authored in 2001 (after the filing of the Complaint) indicates that up to 1200

---

[13]The Plaintiffs have filed a motion to strike the expert report submitted by Defendants on the grounds that it does not meet the standards of Fed.R.Civ.P. 702 and *Daubert v. Merrell Dow Pharmaceuticals,Inc.,* 113 S.Ct. 2786 (1993).  However, this motion will be DENIED since even with the evidence in Defendants' report, they cannot prevail in demonstrating that there was no sediment in the Fawn River at the time the Complaint was filed.  In addition, Plaintiffs' Motion to Strike All Summary Judgment filings is DENIED.

cubic yards of sediment was released into the Fawn River and that of this original release, 180 cubic yards remain presently on the Plaintiffs' property with the rest moving downstream. (Burke Report p. 22 Conclusion 8), see also Conclusions 9 and 10 of the Burke Report, "the majority of the released sediment was initially deposited in the stream reach between the Orland Dam and downstream edge of the Bypass Pool...***Currently***, the bypass pool contains an estimated 180 cubic yards of sediment. (Emphasis added).  Thus, based upon this evidence, the Plaintiffs contend that there is no question but that sediment was released onto their properties and remains there.

In addition to this evidence, the Plaintiffs note that the Burke Report is flawed in several respects.  First, they contend that nothing in the report indicates that the Defendants' experts examined the Greenfield Millpond for sediment and thus, the report cannot rebut the Plaintiffs' evidence that "the Greenfield Millpond, which is located approximately five miles downstream from the Orland Dam, was converted from a primarily open water environment before May 18, 1998 to a primarily vegetative environment after the dam was opened." *Greenfield Mills*, 361 F.3d at 943 fn. 9.[14]  Second, Plaintiffs point out that the locations set forth in the Burke Report that were examined, namely what the report terms "the Upper Pond" and "the Lower Pond" are parts of the reservoir *above* the Orland Dam not downstream from the dam where the discharge is alleged to

---

[14]In addition, Dr. Daniel Willard, an environmental sciences professor, provided expert testimony on Plaintiffs' behalf and stated:

> I have further observed the condition of the small lake at Greenfield Mills, Indiana prior to May 18, 1998, and it has undergone a substantial and extraordinary transformation since the events of May 18, 1998.  What was once mostly [] open water shallow lake environment is now an emergent wetland environment dominated by marshy conditions as a result of massive deposits of sedimentation from the events of May 18, 1998.

Greenfield Mills, 361 F.3d at 943.  Nothing in Defendants' expert report contradicts or raises a genuine issue of fact that Greenfield Mills did not contain sedimentation from the May 1998 events and thus, there is no factual basis for Defendants' arguments.

14

have caused damage. While the Burke Report does mention that examination of the "by-pass pool" near the Lewis's property (downstream of the Orland Dam) was examined, this is of no aid to the Defendants since the Burke Report concluded that 180 cubic yards of sediment remains there.

In response, the Defendants point to other portions of the Burke Report which they allege demonstrate the absence of sediment in the Fawn River. Conclusion 3, for instance, states that water and sediment could not have been emptied from what the report terms the "Upper Pond" due to the actions of May 18, 1998. (Burke Report at 22). Likewise, Conclusion 5 states that "...no significant sediment was discharged from the stream or pond upstream of the Bypass Channel entrance due to the actions taken on May 18, 1998 by IDNR hatchery staff." *Id.* Finally, the Defendants also cite a different portion of Conclusion 10 which indicates "[n]o released sediment was detected downstream of the Bypass Pool." (*Id.* 23). Defendants rely on this last conclusion to explain the absence of any conclusions from their expert as to sediment in Greenfield Millpond. In other words, Defendants contend that there was no reason to examine the Greenfield Millpond because no sediment made its way beyond the bypass pool.

While these conclusions are interesting, the problem for the Defendants here is that the report is too little too late. First, to the extent the Defendants seek to utilize the Burke Report to challenge the assertion that sediment was released into the river by the Defendants' actions of May 18, 1998, this factual issue has already been decided as a matter of law and thus, it cannot be revisited.[15] The Seventh Circuit specifically concluded that "[t]he defendants' actions of May 18,

---

[15] It is also critical to note that although the Burke Report was completed in 2001, the Defendants did not submit its conclusion to this court or to the Seventh Circuit to rebut the contention that the discharge of sediment was causally related to the May 18, 1998 activities. Thus, when given the opportunity to rebut causation in the original proceedings, the Defendants did not do so.

1998, therefore, constituted an addition of dredged spoil into the Fawn River and were subject to the permit requirement of §404." *Greenfield Mills*, 361 F.3d at 934.

Second, while the Burke Report challenges the amount of sediment and its location along the five mile stretch, it admits that in 2001 (after the Complaint was filed) "the by-pass pool contains an estimated 180 cubic yards of sediment." (Burke Report at 23). The Defendants have submitted nothing to refute this conclusion nor have they submitted any evidence to demonstrate that this 180 cubic yards of sediment (or more) that was in the by-pass pool in 2001 when the Burke Report was created was not present at the time the Complaint was filed. As a result, even with the Defendants' expert report, it appears that they have conceded that sediment existed at the time of the Complaint. Accordingly, the Plaintiffs have proven a continuing violation so as to provide the court with subject matter jurisdiction. The Defendants' Motion for Summary Judgment based upon lack of subject matter jurisdiction is DENIED.[16] Plaintiffs' are entitled to Summary Judgment on this issue.[17]

**Plaintiffs' Motion for Summary Judgment**

Plaintiffs move for summary judgment on liability under §404 of the CWA claiming that the Defendants' discharge of dredged materials was not reasonably necessary to the claimed maintenance of the Orland Dam. This motion comes on the heels of the Seventh Circuit's decision

---

[16]To the extent the expert reports differ in the amount of sediment remaining in the Fawn River presently for purposes of remediation, this is not a jurisdictional question but rather a factual issue related to remediation.

[17]Plaintiffs' did not file a cross-motion for summary judgment on the issue of jurisdiction. Nonetheless, they are entitled to judgment as a matter of law on the issue of whether a continuing or ongoing violation exists since no genuine issue of fact exists on this issue. *Jones v. Union Pac. R.R. Co.*, 302 F.3d 735, 740 (7th Cir.2002).

wherein it concluded that the Defendants were subject to the permitting requirement of §404 of the Clean Water Act, but concluded that they can escape liability if they can prove at trial that they were subject to an exemption under 33 U.S.C. §1344(f)(1)(b) and that the defendant's actions were not "recaptured" under 33 U.S.C. §1344(f)(2). (*Greenfield Mills*, 361 F.3d at 949: "In order to escape liability ...the defendants...must establish that their actions fall into one of the narrow exemptions to the permit requirements."). The Court then set forth the following factual questions which must be resolved at trial. First, did the Defendants' activities qualify under the maintenance exemption? In determining the answer to this question, the Seventh Circuit specifically concluded that there were genuine issues of material fact as to whether maintenance was the actual purpose of the defendants' activities rather than a pretext to dredge the pond without a permit. (*Id.* at 951). The Seventh Circuit also noted that if the jury concluded that maintenance was the actual purpose it would then be required to determine whether the discharge of sediment was reasonably necessary to perform the maintenance. *Id.* at 952 ("...we believe that the plaintiffs have brought forth sufficient evidence to permit the trier of fact to conclude that the dredging of the pond was not reasonably necessary to either the maintenance of the pump or the alleged inspection of the gates.").

The present motion relates to this latter question with the Plaintiffs arguing that the Defendants have conceded that the discharge of sediment was not reasonably necessary to any of the alleged dam maintenance. Plaintiffs are correct that there is undisputed testimony from the Defendants indicating that "the dredging of any sediments was not necessary" to the maintenance, (Deposition of David Clary, at pp. 62-63); see also Docket 155 at pp. 3-4; 8-11, and, in their response, the Defendants cite to no factual record indicating that the discharge of sediments was, in fact, necessary to the dam maintenance. For this reason, the court held a telephone conference

17

on April 27, 2005 and specifically asked defense counsel her position on the issue:

> **Court:** ...There is this reasonable necessity – [I] have a question about that. The plaintiffs cite it in the record some testimony from the defendant's witnesses that seem to say that the discharge of sediment was not reasonably necessary to perform the maintenance. What's the – what's the defendant's position on that?
>
> **Counsel:** As to the reasonableness of the discharge?
>
> **Court:** Yes, that was necessary – reasonably necessary to perform the maintenance.
>
> **Counsel:** Well, we would have to state that it wasn't necessary to perform the maintenance.
>
> **Court:** Okay. So that's clear?
>
> **Counsel:** Yes.
>
> **Court:** All right. Okay. So the issue – if you admit that, doesn't that cook your goose on liability?
>
> **Counsel:** Well, potentially. Although –
>
> **Court:** ...Well, how do you escape liability in light of that admission?
>
> **Counsel:** Well, I don't know if we necessarily can.

(Tr. at 11-12). In light of counsel's concession as well as an indication later in the hearing that counsel desired to consult with her witnesses to verify what they said in their depositions, the court instructed defense counsel to make any further filings regarding the admission that the discharge of sediment was not reasonably necessary to the maintenance within ten days of the hearing. Specifically, the following exchange occurred:

> **Counsel:** I'd like to review my witness' deposition testimony when they said – or where they say that it was not reasonably necessary.
>
> **Court:** Well, it's cited in the plaintiff's brief.
>
> **Counsel:** Yes, so –
>
> **Court:** Well, you do that. But I want to, – if you are going to take any further steps on that issue to try to escape the admission that you've made today, I want to know that within ten days.

(Tr. at 18-19).

18

Thereafter, the Defendants filed a notice wherein they stated that they "are not ready to discuss the liability issue at this time." (Docket 199, p. 1). The point of this filing was that the Defendants sought a ruling on the jurisdictional question presented in their own motion for summary judgment before outright conceding liability regarding the Plaintiffs' Motion for Summary Judgment. But, as the court noted during the telephone conference, the concession that the discharge of sediment was not reasonably necessary to the maintenance is, in fact, a concession that the Defendants do not qualify for an exemption to the permitting scheme of §404. In any event, when presented with the opportunity to rescind the factual concession or even to seek additional time to challenge the contentions, the Defendants punted and opted not to discuss the issue despite pending summary judgment motions filed by the Plaintiffs. What is left presently is a record completely void of any evidence that the discharge of sediment was reasonably necessary to the maintenance. This, in turn, is a concession that the Defendants do not qualify for the maintenance exemption so as to insulate themselves from liability for conducting dredging activities without a permit. *See Greenfield Mills,* 361 F.3d at 950 ("In order to escape liability under the CWA, the defendants therefore must establish that their actions fall into one of the narrow exemptions to the permit requirements."). Defendants have never asserted that any of the other statutory exemptions apply and thus, the Plaintiffs' Motion for Summary Judgment is GRANTED.

**Motion for Order to Show Cause**

Also pending is Plaintiffs' Motion for a Show Cause Order seeking to have the Defendants show cause why they have not paid appellate costs ordered by the Seventh Circuit. Defendants did not respond to this filing. Accordingly, the court ORDERS the Defendants to file a notice within ten (10) days indicating why such costs have not been paid.

## **Summary and Conclusion**

Based on the foregoing, the court concludes as follows:

(1)   Defendants' Motion for Summary Judgment is DENIED; Plaintiffs' are entitled to summary judgment on the existence of a continuing/ongoing violation so as to provide this Court with subject matter jurisdiction over the CWA claim;

(2)   Plaintiffs' Motions for Summary Judgment are both GRANTED;

(3)   Plaintiffs' Motion to Strike Expert Report, Amended Motion to Strike, and Motion to Strike All Summary Judgment filings are DENIED; and.

(4)   Plaintiffs' Motion to Show Cause is GRANTED.  Defendants shall file a notice within ten (10) days indicating why appellate costs have not been paid.

A telephonic status hearing shall be set by way of separate minute entry at which time the parties should be prepared to discuss the issue of remediation and the appointment of a court appointed expert or special master.

Entered: This 28th day of June 2005.

s/ William C. Lee
United States District Court
Northern District of Indiana
