**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION**

| | | |
|---|---|---|
| GREENFIELD MILLS, INC., et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Cause No. 1:00 CV 0219 |
| | ) | |
| ROBERT E. CARTER, JR., as Director | ) | |
| of the Indiana Department of Natural | ) | |
| Resources, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Before the court is the Plaintiffs' Renewed Motion for an Interim Award of Attorney Fees originally filed on October 27, 2006 and renewed on November 9, 2007. Defendants responded on November 26, 2007 to which the Plaintiffs replied on December 5, 2007. Supplemental filings related to the interim fee petition were filed on January 7 and 8, 2008. On February 4, 2008, the parties filed a "Joint Request for Limited Stay" indicating that progress had been made regarding settlement of the matter of interim fees. On February 13, 2008, the Defendants filed a "Notice of Settlement of Matters at Issue in Plaintiffs' Renewed Motion for Interim Attorney's Fees." For nearly six weeks thereafter, the court received from the parties status reports, updated status reports, and finally a motion for a hearing on the Notice of Settlement that had previously been filed. The court held a conference with counsel on April 6, 2008 at which time, new counsel appeared for the Defendants (in addition to Defendants' counsel already on the record) and advised that the Indiana Attorney General refused to approve the settlement reached by the parties and counsel. The undersigned then ordered the parties to make a final attempt to revive the settlement within thirty

1

days or the court would proceed to consider the interim fee petition.  On May 8, 2008, counsel advised the court that no settlement could be reached.  Accordingly, and for the following reasons, the Plaintiffs' request for interim fees and costs will be GRANTED in the amounts set forth herein.

### Background

On May 16, 2000, the Plaintiffs,[1] filed their multi-count Complaint charging the Defendants with violations of the Clean Water Act, 33 U.S.C §1365, the Civil Rights Act, 42 U.S.C. §1983 and conspiracy to violate the Civil Rights Act, 42 U.S.C. §1985.[2]  To oversimplify, Plaintiffs asserted that the Defendants violated the Clean Water Act ("CWA"), 33 U.S.C. §1311, by failing to obtain a permit required by the CWA before conducting dredging activities at the Fawn River State Hatchery. Plaintiffs further asserted that their First, Fourth, Fifth and Fourteenth Amendments were violated by the activities of the Defendants.

During this case's first stint before this court, the undersigned granted summary judgment to the Defendants on all the CWA claims and on the constitutional claims related to the Takings Clause of the Fifth Amendment and the Due Process Clause of the Fourteenth Amendment.  Prior to this court's ruling, the Plaintiffs, after some urging by this court, voluntarily dismissed the remaining §1983 claims.  On appeal, the Seventh Circuit reversed this court's decision as to one of the CWA claims but affirmed the court's grant of summary judgment as to the Fifth and Fourteenth Amendment claims.  After post-appeal proceedings in this Court, the undersigned granted summary judgment as to liability under the CWA against the Defendants.  Thereafter, the parties agreed to

---

[1]The Plaintiffs are riparian owners and users of the affected downstream stretch of the Fawn River.

[2]The Plaintiffs voluntarily dismissed their conspiracy claims pursuant to 42 U.S.C. §1985 against the Defendants.

2

permanent injunctive relief (docket #s 225 and 255) and agreed to the appointment of CH2M Hill to serve as a neutral expert to: (1) prepare an assessment of current conditions of the Fawn River and Greenfield Mills pond, and of the presence of excess sediments in the Fawn River and Greenfield Mills' pond; and (2) prepare, if necessary, specifications for removal of any sediments, and plans for remediation of the aquatic habitat and aquatic populations, as may be necessary to remediate the effects of any excess sediment or related damage and to restore the Fawn River and Greenfield Mills' pond to pre-May 18, 1998 condition, together with preparing a cost estimate of the same. (See Stipulation, Docket #248).  These tasks were to be divided into three phases.

On January 9, 2007, the undersigned denied the original request for interim fees under the theory that because CH2M Hill had not yet determined that excess sediment from the May 18, 1998 event remained in the Fawn River, the Plaintiffs' motion was premature.  However, the Court laid the groundwork for Plaintiffs to renew their motion once CH2M Hill's initial assessment was completed and the court determined the assessment was favorable to the Plaintiffs.

This is precisely what occurred.  On April 26, 2007, the Court received the Phase One report from CH2M Hill.  Plaintiffs then moved to proceed to Phase II contending that the report, on its face, supported a conclusion that substantial excess sediment from the May 18, 1998 event remained in the Fawn River.  Defendants objected and submitted supplemental expert data supporting, they argued, a different conclusion than that of CH2M Hill.  A hearing was held on November 2, 2007. On November 9, 2007, the undersigned entered an Opinion and Order [DE 285], finding that CH2M Hill had determined that excess sediments are present to a substantial degree in the Fawn River and Greenfield Mills Pond as a result of the May 18, 1998 event and directing CH2M Hill to proceed with the remediation phases of the assessment.  On the same day, Plaintiffs' renewed their request

for interim fees.

Plaintiffs seek an award of fees *pendente lite* in an amount of $1,232,629.75 as well as costs and expenses in an amount of $78,803.57 through October 26, 2006. [DE 259, Exh.25].

## DISCUSSION

The citizen-suit provision of the CWA authorizes a court to award the "costs of litigation (including reasonable attorney ··· fees) to any prevailing or substantially prevailing party[.]" 33 U.S.C. § 1365(d).[3]  Under fee-shifting statutes such as the one above, courts may order an interim fees award, but "only when a party has prevailed on the merits of at least some of his claims." *Hanrahan v. Hampton,* 446 U.S. 754, 758 (1980).  To qualify as "prevailing," a party "must have succeeded on 'any significant issue in the litigation which achieves some of the benefit' sought." *Earth Island,* 838 F.Supp. at 464 (quoting *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933).  Or, put in slightly different terms, a "prevailing party" is one that achieves "a material alteration of the legal relationship of the parties." *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Resources,* 532 U.S. 598, 604,(2001)).

In *Webster v. Sowders,* 846 F.2d 1032 (6th Cir.1988), the Court summarized the law concerning interim awards of attorney's fees as follows:

> Interim attorney fees awarded during the pendency of litigation are permissible and thus within the authority of the district court when the court has entered a concrete order that determines substantial rights of the parties, meaning when a party has prevailed on the merits of at least some of his claims. Interim fees are especially

---

[3]This language is similar to that of many other federal fee-shifting statutes, *see, e.g.,* 42 U.S.C. §§ 1988, 2000e-5(k), 7604(d); case law construing what is a "reasonable" fee applies uniformly to all of them. *Flight Attendants v. Zipes,* 491 U.S. 754, 758, n. 2, 109 S.Ct. 2732, 2735, n. 2, 105 L.Ed.2d 639 (1989).

appropriate when a party has prevailed on an important matter in a case, even if the party ultimately does not prevail on all issues. The Supreme Court has declared that, particularly in complex cases of long duration, delaying a fee award until the conclusion of litigation would work substantial hardship on plaintiffs and their counsel and discourage the institution of actions that Congress intended to encourage by passage of attorney fee statutes.

It is precisely for the above reasons, namely the duration of this case and the importance of the consent decrees entered in response to the liability determination that Plaintiffs believe they are entitled to an award of interim fees.  The Defendants oppose Plaintiffs' petition for an award of fees and costs contending that no final judgment has been entered in this case.

Certainly an award of interlocutory or interim attorney's fees are the exception rather than the rule.  In this case, however, it would be an abuse of discretion to deny them given the substantial relief that plaintiffs have obtained and the permanent change in policy and law that plaintiffs have achieved because of this case – all without a final judgment having yet been entered. *See Northeast Iowa Citizens For Clean Water v. Agriprocessors, Inc.* 489 F.Supp.2d 881, 892 (N.D.Iowa,2007) (citing authorities and indicating that a consent decree may serve as the basis for an award of attorneys fees under the CWA).  The Defendants in this case agreed[4] to a key fact on the record which resulted in the adverse liability determination against them at the post-remand summary judgment phase. [DE 208].  Flowing from that determination, the parties stipulated to an Order of Permanent Injunction enjoining the defendants from "future operation of IDNR dams or other water control structures in a manner that would violate the Clean Water Act."  This, in and of itself, is

---

[4]The fact that the Defendants **admitted** that the draw-down of the dam was not "necessary to the maintenance of the dam" was crucial to this court's determination that the maintenance exception to the Clean Water Act permitting requirements did not apply to this case. Although the Defendants have indicated that they intend to appeal the liability finding, their admission makes their appellate path a difficult one.

substantial relief.  But, the Plaintiffs also obtained a permanent policy change to the manner in which the Indiana Department of Natural Resources operates its dams.  In fact, this case resulted in a change in national policy as well;  the United States Army Corps of Engineers has issued a Regulatory Guidance Letter to governmental agencies, which cites to this case, and provides advice relating to releases of sediments from or through dams.

Moreover, the court-appointed expert in this case has concluded that massive amounts of sediment remain in the Fawn River as a result of the May 18, 1998 event leaving only the scope and manner of remediation to be determined.  Thus, Plaintiffs have prevailed in demonstrating that their CWA claim involved not only a technical violation of the statute (i.e. absence of a permit) but that the Defendants' action damaged their interests in the Fawn River.  Thus, given the reach of this case, the time that has elapsed during this litigation, and the disparity in litigation resources between the parties, failure to award interim fees would create a considerable risk of starving out plaintiffs with what this Court has already determined to be a valid claim.  Accordingly, the court concludes that an award of interim fees is appropriate in this case.[5]

## II.  Determination of "Reasonable Fee"

The fee applicant bears the burden of establishing and documenting the appropriate hours expended and hourly rates. *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).  The district court has "wide latitude" in setting awards of attorney's fees. *Divane v. Krull*

---

[5]An interim award of attorneys' fees generally is interlocutory and not appealable until the conclusion of the underlying suit on the merits. *See Estate of Drayton v. Nelson,* 53 F.3d 165, 166-67 (7th Cir.1994). There is, however, one exception to this rule: An interim award of fees may be appealed if "the party against whom the award is made will not be able to get his money back if he prevails at the end of the case and the award is vacated then." *Id.* at 167.

*Elec. Co.,* 319 F.3d 307, 314 (7th Cir.2003). Where litigants cannot settle the amount of a fee, "the

most useful starting point for [court determination of] the amount of a reasonable fee [payable by

the loser] is the number of hours reasonably expended on the litigation multiplied by a reasonable

hourly rate," the so-called "lodestar" determination. *Gisbrecht v. Barnhart,* 535 U.S. 789, 802, 122

S.Ct. 1817, 152 L.Ed.2d 996 (2002) (quoting *Hensley,* 461 U.S. at 433.) The court "may then

increase or reduce the modified lodestar amount by considering a number of factors, the most

important of which is the 'degree of success obtained.' " *Spegon,* 175 F.3d at 550, *quoting Hensley,*

461 U.S. at 436 (citations omitted).

Plaintiffs have submitted affidavits and billing records from their attorneys documenting

hours worked and setting forth the hourly billing rate for each individual who worked on the case.

Defendants make a general objection to the entirety of the petition, claiming that the hours billed

are too vaguely recorded for counsel to determine the general subject matter of the various time

expenditures. The court has reviewed the billing entries and concludes that this objection is simple

nit-picking by Defendants.[6]   Counsel are "not required to record in great detail how each minute

of [their] time was expended. But at least counsel should identify the general subject matter of [their]

---

[6]In response to a party's general objection that the billing entries of the movant's attorney were
"vague," one district court stated:

> It is, in general, inappropriate for [the party objecting to a fee request] to merely cite
> 'examples,' and effectively delegate to the Court the work of analyzing all billing entries
> line-by-line in an effort to identify other entries that [the party] might find similarly
> objectionable .... It is particularly inappropriate here, because-quite apart from the
> trespass on the Court's time-the Court cannot know what the [party] considers to be
> unduly "vague." Federal judges are not required to be telepathic.

*Former Employees of BMC Software, Inc. v. U.S. Secretary of Labor,* 519 F.Supp.2d 1291, 1326
n. 51 (Ct. Int'l Trade 2007). See also, *Albrechtsen v. Bd. of Regents of the Univ. of Wisconsin Sys.,*
309 F.3d 433, 436 (7th Cir.2002) ("Judges are not like pigs, hunting for truffles buried in the
record").

time expenditures." *Hensley v. Eckerhart,* 461 U.S. at 437 n. 12, 103 S.Ct. 1933 ( *citing Nadeau v. Helgemoe,* 581 F.2d 275, 279 (1st Cir.1978)); *see also Naporano Iron and Metal Co.,* 825 F.2d at 404 ("itemized statement" submitted by fee applicant must be sufficiently detailed to show "specific task[s] performed").  The time entries, while perhaps not as detailed as Defendants would like in some instances, set forth the general nature of the billed time and provide adequate detail for Defendants to ascertain what tasks the attorneys were performing and whether they were reasonable and necessary expenditures of time.[7]   Indeed, "[i]f counsel submit bills with the level of detail that paying clients find satisfactory, a federal court should not require more." *In re Synthroid Mkt'g Litig.,* 264 F.3d 712, 722 (7th Cir.2001). On the whole, the court's review of the submitted billing statements demonstrates that the level of detail is acceptable (with the exceptions noted elsewhere in this Order).[8]

### A.    Hours Reasonably Expended

Plaintiffs' counsel has billed nearly 3700 hours over the course of this extended litigation. Before an extended examination of these hours is undertaken, it is critical to the underlying discussion to make three preliminary observations.  First, this case involved several  novel legal issues requiring extensive research and briefing which, in many instances, was compounded by supplemental  briefing ordered by this Court and objections or motions to strike filed by the parties.

---

[7]Plaintiffs' counsel Neal Lewis acknowledges that a technical computer error caused many of his billing entries to be incomplete.  However,  he has resubmitted those billing entries to the court to correct the error.

[8]Even where an attorney's time entries are, on their face, vague, "courts may attempt to decipher them by reference to the context in which these entries occur [to determine] what work was involved." *Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.,* 970 F.Supp. 333, 342 (S.D.N.Y.1997). Courts may also use their knowledge of a case to assess time entries. *See Algie v. RCA Global Communications, Inc.,* 891 F.Supp. 875, 894 (S.D.N.Y.1994).

Second, the Defendants in this case have played a significant role in drawing out this litigation thereby increasing the work and the hours required by Plaintiffs' counsel in this case.[9] Finally, the form of the Defendants' objections to the present fee petition have made the court's determination of the reasonableness of the fee petition difficult.  For instance, the Defendants have objected to certain time entries on multiple grounds (i.e., an entry is objectionable because it is  duplicative, involves excessive time before the complaint was filed, and relates to an unsuccessful claim, or an entry is objectionable legal research and it constitutes excessive time on motion practice) thereby making it difficult for the court to isolate (and not, in turn, duplicate) the reductions the court finds appropriate.[10]

Turning now to the hours expended, the Court has an "obligation" to exclude from the fee petition hours that were "not reasonably expended on the litigation." *Spegon v. The Catholic Bishop of Chicago,* 175 F.3d 544, 550 (7th Cir.1999) (internal citations omitted). Fees "not reasonably expended" include "hours that are excessive, redundant, or otherwise unnecessary." *Id.* (citing *Hensley,* 461 U.S. at 434); *see also F. John Stark III v. PPM Am., Inc.,* 354 F.3d 666 (7th Cir.2003) (same). The Court must disallow "not only hours spent on tasks that would not normally be billed to a paying client, but also those hours expended by counsel on tasks that are easily delegable to non-professional assistance." *Spegon,* 175 F.3d at 553 (internal citations omitted).

Lead counsel on Plaintiffs case represent that they have exercised billing judgment and have

---

[9]The undersigned does not fault the Defendants for putting up a vigorous defense; yet, in doing so they  have left open the very possibility that the additional hours devoted to this case by Plaintiffs counsel will be charged to them.

[10] Defendants claim that this is due to the block billing practice of plaintiffs counsel; but, as the court indicates elsewhere, there is nothing inappropriate with that billing practice.

actually under-billed in this case. Defendants, however, believe that the total of 3700 hours billed

by Messrs Lewis is excessive and not reasonably expended on this case.[11] Further, Defendants

contend that the lack of "billing judgment" is clear because the Plaintiffs have sought to write off

none of the 3700 hours set forth in their counsel's billing statements. However, "as a practical

matter, billing judgment may be exercised either when an attorney's time is recorded (*i.e.,* when the

attorney decides whether to record time spent on an activity, or whether to essentially 'write it off),

or when a billing statement is prepared (*i.e.,* when the billing attorney reviews all records of time

recorded as chargeable to a particular client account, and decides whether to 'write off' any of that

time)." *Former Employees of BMC Software, Inc. v. U.S. Secretary of Labor*, 519 F.Supp.2d 1291,

1317 (CIT, 2007). In this case, Plaintiffs' counsel represent that they have exercised both forms of

billing judgment. Nevertheless, Defendants take issue with twelve different categories of time

entries, each of which will be categorized (some categories grouped together) and discussed below.[12]

### 1.        Time Billed on Unsuccessful Claims

Defendants first object to the time counsel devoted to claims for which they have been

unsuccessful, namely the claims brought pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1985. As

Defendants point out, Plaintiffs pursued such claims through appeal and eventually lost on all claims

except their claim under section 404 of the CWA. As a result, Defendants contend that the hours

---

[11]Defendants also challenge all of the time expended by Matthew Hohman and the attorneys at Warner Norcross & Judd although they do not challenge the hourly rates for these attorneys.

[12]Although they have raised numerous objections to particular items in Plaintiffs' fee request, the Defendants have not suggested an alternative figure that they claim represents a reasonable amount of total fees in this case. Instead, the Defendants simply argue that the number of hours claimed is not reasonable and that the court should reduce the number of hours claimed (often by arbitrary percentages) for tasks that they assert were unnecessary, irrelevant and duplicative.

spent on the unsuccessful claims should be excised from the billed hours.  In response, Plaintiffs argue that the civil rights claims all arose out of the same event as the CWA claims and thus, the claims involved a similar set of facts.

In cases where Plaintiffs are only partially successful, the court should determine "whether or not the plaintiff's unsuccessful claims were related to the claims on which he succeeded, and whether the plaintiff achieved a level of success that makes it appropriate to award ... fees for ... unsuccessful claims." *Dunning v. Simmons Airlines, Inc.,* 62 F.3d 863, 872 (7th Cir.1995). Plaintiffs cannot recover attorney fees for unsuccessful claims that are "distinct in all respects from his successful claims." *Bryant v. City of Chicago,* 200 F.3d 1092, 1101 (7th Cir.2000). However, if Plaintiffs' claims are related to a "common core of facts or are based on related legal theories ... time spent on related claims that ultimately prove unsuccessful should not be automatically excluded from the attorney's fee calculation." *Bryant,* 200 F.3d at 1101. As the Supreme Court stated in *Hensley,*

> In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

*Hensley,* 461 U.S. at 435.

In this case, it is true that the Plaintiffs began this case with some far-fetched legal theories.[13]

---

[13]For instance, the Plaintiffs contended that the May 18, 1998 events constituted an illegal seizure in violation of the Fourth Amendment.  And, presumably at least some of the research time expended on

To their credit, Plaintiffs, early in the litigation, voluntarily dismissed their conspiracy claims as well as their claims under the First and Fourth Amendments and their claim under the Equal Protection clause. Plaintiffs then chose to proceed on two remaining §1983 claims that, although ultimately unsuccessful, could not be said to be frivolous or without any possibility of success. Further, while these claims sought relief under alternate legal theories for the damages Plaintiffs suffered, the unsuccessful claims that were ultimately pursued through appeal were factually identical to the facts underlying the successful CWA claim. Further, as the litigation progressed, it became clear that the remaining civil rights claims were a small portion of the litigation; this court, the Court of Appeals and the parties focused heavily on the CWA claim on which the Plaintiffs have prevailed. Therefore, this is indeed a case where the time of Plaintiffs counsel was "devoted generally to the litigation as a whole" and Plaintiff's lawsuit "cannot be viewed as a series of discrete claims." *Id.* Accordingly, the Court declines to reduce the number of hours based upon Plaintiffs' unsuccessful claims. *See*

*Aiello v. Town of Brookhaven,* 2005 WL 1397202, 2 (E.D.N.Y. 2005) (refusing to discount hours for unsuccessful CWA and state-law claims because Plaintiffs ultimately achieved remediation plan and "this victory was achieved in the face of an able and aggressive defense mounted by the [defendant]").

### 2.   **Secretarial/Administrative Tasks**

---

the section 1983 claims included this claim and two others that were similarly questionable. However, from the billing records the court cannot discern the number of hours expended on these claims vis-a-vis the other, more reasonable, 1983 claims. In any event, the court agrees that some deduction is warranted for those claims and has taken this into account in its determination of which pre-litigation hours to permit.

Defendants next argue that Plaintiffs' fee petition includes numerous hours expended by counsel on tasks "that are easily delegable to non-professional assistance." *Spegon,* 175 F.3d at 553. Defendants also contend that it is impossible to separate the exact number of hours expended on non-professional work because the Plaintiffs utilized block billing which lumps together non-professional work with attorney work.[14]

The hours objected to by Defendants in this category fall within the realm of "nit-picking from the outside and in hindsight [which] provides no basis for disallowance" of fees.  See *Trustees of Chicago Plastering Institute Pension Trust v. Cork Plastering, Inc.,* 2008 WL 728897, 4 (N.D.Ill. 2008).  Block billing is not a prohibited practice.  *Farfaras v. Citizens Bank and Trust of Chicago,* 433 F.3d 558, 569 (7th Cir. 2006) ("Although 'block billing' does not provide the best possible description of attorneys' fees, it is not a prohibited practice.").  This said, there are a few entries which give the court pause and which will be excluded from their fee request.

Defendants first object to the time lead counsel billed (125 hours) for walking and observing the five mile stretch of river alleged to have been affected by the events that occurred on May 18, 1998.  There appear to be two distinct types of on-site evaluation that occurred in this case, only some of which the court finds reasonable.  First, there appears to have been substantial observation, documentation, and examination of the river immediately after the May 18, 1998 event.  In fact, between May 18, 1998 and November 3, 1998, Attorney Neal Lewis logged 68.5 hours examining the river and obtaining first-hand accounts of those events from homeowners living on the affected

---

[14]"Block billing is a form of time-keeping that involves stating the total daily time spent on a case, rather than separating out the time into individual entries describing specific activities." *Rodriguez ex rel. Kelly v. McLoughlin,* 84 F.Supp.2d 417, 425 (S.D.N.Y.1999).

portion of the river.   One of the main points of contention throughout this case has been the vastly differing accounts of what occurred on May 18, 1998 and the immediate effects of the May 18, 1998 events.   Defendants have maintained, at least until recently, that there was no substantial amount of sediment that flowed into the river as a result of their conduct.   It makes perfect sense then that the time Plaintiffs' counsel spent documenting the conditions and interview potential witnesses regarding their knowledge of the events is compensable.   The court does not reduce, therefore, any time spent investigating the river conditions that was expended prior to March 4, 1999 (ten months after the event).

However, there also appear to be a series of entries which are not contemporaneous with the May 18, 1998 events and which reflect that counsel spent time accompanying potential expert witnesses to the river.   As a general matter, courts have rejected time spent by attorneys accompanying non-testifying experts on site visits.  *Halderman by Halderman v. Pennhurst State School & Hosp.* 49 F.3d 939, 942 (3rd Cir. 1995).   Here, Plaintiffs have not identified why it was necessary for the experts to be accompanied by counsel nor the reason for the expert to be called in the first instance.   There are also several entries which vaguely reference simply that counsel spent time "on river."   Accordingly, the following time entries are excluded:

| ENTRY FOR NEAL LEWIS | TIME EXCLUDED |
|---|---|
| 7/28/99 On river with Gasper & Meet with Clients | 3 (3 hours were not excluded to account for client meeting |
| 8/14/99 On site investigation with Dan Willard | 6 |
| 8/14/99 On the river with White | 4 |
| 9/3/99   On the River with Zeleha | 8 |
| 10/3/99 On the River with Zeleha and meet with clients | 2.5 (2.5 hours were not excluded to account for client meeting) |
| 5/21/01 On river. | 5.0 |
| 5/22/01 On river | 4.5 |
| 9/25/04 On river with Zeleha | 3.5 |
| **Total Excluded** | 36.5 hours |

The remaining objections do not require extended discussion and are denied.

**3.     Travel Time**

Defendants next object to travel time claimed by attorney Eric Lewis to travel to and from Fort Wayne as well as to Chicago (for the appeal) in this case.  The court has reviewed the entries related to Plaintiffs' counsel Eric Lewis's travel and the travel times appears reasonable in light of *Stark v. PPM Am., Inc.,* 354 F.3d 666, 674 (7th Cir.2004) (holding that travel time and expenses are compensable). Accordingly, no reduction for travel time has been made.

**4.     Duplicative/Unnecessary/Unidentified Research and Fees Billed by the Warner Firm**

Defendants have coded numerous entries in the Plaintiffs' fee petition that they deem duplicative, unnecessary or research not sufficiently identified.  Defendants also object to all of the fees expended ($30,688.00) by the attorneys of Warner Norcross & Judd LLP (hereafter, "the Warner Firm"), claiming that all of these fees are duplicative and unnecessary especially since the Warner Firm did not appear as counsel of record for plaintiffs at any time in this action and a great deal of the fees expended relate to the unsuccessful claims.

The main objection by Defendants relates to the nearly 1059.55 hours devoted to research by Messrs Lewis, much of which is identified simply as "Westlaw research" or "legal research" in the Plaintiffs' petition. In addition, they complain many of the entries are too vague for them to identify exactly what work Plaintiffs' counsel was performing and that much of the "research" is duplicative of research undertaken by the Warner Firm.

With respect to the "vague" entries related to legal research, this court has reviewed the time

15

entries objected to by Defendants and agree that at least some of  the time entries should be excluded.[15]  The following hours for Messrs Lewis, as itemized below, shall be disallowed for inadequate description:

| DATE AND ENTRY (FOR ATTORNEY ERIC LEWIS) | HOURS BILLED |
|---|---|
| 4/13/99 - legal research and memos | 2.0 |
| 4/14/99 – leg rsch | .5 |
| 4/16/99 – leg rsch | 4.0 |
| 4/28/99 –  leg rsch | 1.0 |
| 4/29/99 – leg rsch | 1.6 |
| 5/27/99 – fax to nrl; rsrch law | .8 |
| 8/23/99 – rsrch law | .3 |
| 8/25/99 – rsrch law | .3 |
| 11/99 through 7/10/00 extensive legal research; internet searches; library research... | 30.0 |
| 7/11/00 – rsrch law; t.c. s nrl | 3.0 |
| 7/13/00 – rsrch law; faxes to nrl | 2.0 |
| 8/7/00 – rsrch law | .2 |
| 12/4/00 – review corr; rsrch law; tc nrl; begin prep for oral arg | 4.1 |
| 3/4/01 – legal research and memos; review pleadings | 6.0 |
| 3/21/01 – rsrch law; memo to file | 2.0 |
| 5/11/01 – rsrch law | .2 |
| 6/19/01 – rsrch law | 2.0 |
| 7/12/01 – legal rsrch; brief drafting; corr to nrl; legal rsrch | 2.0 (two hours were allowed to account for brief drafting and correspondence |
| 9/22/01 – rsrch law, memos to file, brief prep | 3.0 (three hours not excluded) |
| 12/14/01 – rsrch law | .3 |
| 7/13/04 – legal rsrch; corr nrl | 1.5 |
| 2/14/05 – rsrch law | 2.6 |
| 5/16/05 – rsrch law | 1.0 |
| 5/17/05 – rsrch law | 1.5 |
| 6/6/05 – legal rsrch; org. file | .2 |
| 7/27/05 – file org; rsrch law | .2 |

[15]Hours that were block-billed and included tasks other than legal research were not excluded entirely and, in most instances, were reduced by half of the recorded hours.  Also, research hours that coincide with various briefing schedules on this case are not excluded because the research appears to be related to such briefing even though not specifically identified.

| | |
|---|---|
| 7/28/05 – rsrch law;corrs nrl | 1.0 |
| 8/2/05 – corrs nrl; file org; rsrch law | .7 |
| 8/23/05 – Research law | .2 |
| TOTAL EXCLUDED FOR ERIC LEWIS | 74.2 |

| DATE AND ENTRY FOR NEAL LEWIS | HOURS BILLED |
|---|---|
| 3/05/99 research at Warner Norcross | .1 |
| 7/11/00 Westlaw research | .1 |
| 7/12/00 Westlaw research | .1 |
| 7/13/00 Westlaw research | .1 |
| 9/7/00 Westlaw research | 2 |
| 9/8/00 Westlaw research | 4.5 |
| 9/9/00 Westlaw research | 2 |
| 9/10/00 Westlaw research | 1.5 |
| 9/11/00 Westlaw research | .2 |
| 10/3/00 Westlaw research | .6 |
| 10/4/00 Westlaw research | .2 |
| 10/5/00 Westlaw research | .6 |
| 10/6/00 Westlaw research | .4 |
| 10/16/00 Westlaw research | .5 |
| 10/17/00 Westlaw research | .2 |
| 10/18/00 Westlaw research | .2 |
| 10/23/00 Westlaw research | 1.5 |
| 10/24/00 Westlaw research | .5 |
| 11/9/00 Westlaw research | 1.5 |
| 11/10/00 Westlaw research | .25 |
| 11/14/00 Westlaw research | .6 |
| 11/16/00 Westlaw research | .2 |
| 1/24/01 Westlaw research | .2 |
| 3/7/01 Westlaw research | .25 |
| 3/19/01 Westlaw research | .2 |
| 4/19/01 Westlaw research | .2 |
| 8/10/01 Westlaw research | .1 |
| 8/29/01 Westlaw research | 1.0 |
| 8/30/01 Westlaw research | .2 |
| 3/13/02 Westlaw research | .25 |
| 6/27/02 Westlaw research | .2 |
| 6/28/02 Westlaw research | .2 |
| 7/03/02 Westlaw research | .1 |
| 8/02/02 Westlaw research | .1 |
| 8/06/02 Westlaw research | .1 |
| 8/09/02 Westlaw research | .1 |
| 8/14/02 Westlaw research | .5 |
| 8/16/02 Westlaw research | .2 |

| 8/22/02 Westlaw research | .4 |
|---|---|
| 9/03/02 Westlaw research | 1.4 |
| 8/01/03 Westlaw research | .1 |
| 2/05/04 Westlaw research | .1 |
| 2/11/04 Westlaw research | .6 |
| 9/14/04 Westlaw research | .5 |
| 9/28/05 Westlaw research | .75 |
| 11/15/05 Westlaw research | .5 |
| TOTAL EXCLUDED Hours for Neal Lewis | 26.1 |

The record also reveals that substantial time was devoted to research by the Warner Firm, which has charged $22,048.50 for research and correspondence regarding research to Messrs Lewis. If multiple attorneys represent a prevailing party, then that party may be able to recover a reasonable fee for each of the attorneys. "The proper question is whether the application, for one or more attorneys, is reasonable...." *Schultz v. Amick,* 955 F.Supp. 1087, 1115 (N .D.Iowa 1997). "A court may reduce attorney hours, and consequently fees, for inefficiency or duplication of services in cases where more than one attorney is used." *A.J. ex rel. L.B. v. Kierst,* 56 F.3d 849, 864 (8th Cir.1995).

Plaintiffs do not acknowledge that any duplication of services has occurred by virtue of the Warner Firm's research work on this case. Rather, it appears that plaintiffs assigned the Warner Firm the task of researching and advising them on the §1983 civil rights claims. Indeed, a review of the Warner Firm's billing entries reflects that it became involved in this case in a consulting and researching role in March, 1999 (before the filing of a complaint in this action). The court has cross-referenced this time with that recorded by Messrs Lewis and it is clear that the Warner Firm's role in this litigation did not result in any significant duplicative legal research related to the section 1983 litigation.

18

However, there are some troubling entries from the Warner Firm's billing.  For instance, the Warner Firm spent substantial time reviewing drafts of briefs written by Messrs Lewis and, it appears, consulting/conferencing on them.  Messrs Lewis have sought premium rates in this litigation claiming that their experience and expertise warrant such rates.  Giving Messrs Lewis this credit, the court does not believe that the Defendants should have to pay for multiple firms to review and consult on drafts of  briefs that two expert lawyers have drafted.  Accordingly, the court excludes the following hours from the Warner Firm's bill:

| | |
|---|---|
| 9/14/00 Review summary disposition reply briefs | $82.00 |
| 9/01/04 Conferences with Mr. Lewis regarding Fawn River Summary Judgment motion | $175.00 |
| 9/2/04 Analyze summary judgment opinion | $250.00 |
| 9/29/04 Review draft summary judgment brief | $150.00 |
| 9/30/04 Review revised summary judgment brief | $400.00 |
| 10/04/04 Review summary judgment brief | $1,000.00 |
| 10/7/04 Review revised summary judgment brief from Mr. Eric Lewis and correspondence regarding same | $250.00 |
| 10/13/04 Review revised summary judgment brief from Mr. Eric Lewis and correspondence regarding same | $325.00 |
| 10/15/04 Review summary judgment brief from Mr. Neal Lewis | $75.00 |
| 1/10/05 Review plaintiffs brief in reply to defendants' motion for summary judgment | $150.00 |
| 1/28/05 Review Mr. Neal Lewis summary judgment briefs and reply briefs; motions to strike | $125.00 |
| **TOTAL EXCLUDED** | **$2,982.00** |

With respect to the remaining entries to which Defendants object, the same are denied.

### 5.      Press/Media Communications

Defendants object to the time billed by counsel (16.5 hours[16] by Attorney Eric Lewis) for drafting press releases and maintaining a website (<u>Friends of Fawn River</u>) that the Plaintiffs created to publicize their case. In response, Plaintiffs counsel assert that the litigation was important to the public interest and thus, they believed it was necessary to field press inquiries and draft press releases so as to control the flow of information to the media. In addition, the Plaintiffs maintained a website as a "public service" to those interested in the Fawn River.

Courts that have considered such claims have routinely denied reimbursement for attorney time related to media relations. In *Rum Creek Coal Sales, Inc. v. Caperton,* 31 F.3d 169 (4th Cir.1994), the Court of Appeals rejected a 42 U.S.C. § 1988 claim for fees for public relations efforts "to sway public opinion and influence State policy-makers to change [the defendant's police] enforcement policies." *Id.* at 176. The Court commented that "[t]he legitimate goals of litigation are almost always attained in a courtroom, not in the media." *Id.*

Similarly, in *Halderman by Halderman v. Pennhurst State School & Hosp.* 49 F.3d 939, 942 (3rd Cir. 1995), the Third Circuit adopted the reasoning in *Rum Creek* and denied the request for fees for "work related to writing press releases, speaking with reporters and otherwise publicizing the contempt motion" holding that "the proper forum for litigation is the courtroom, not the media. It is particularly inappropriate to allow public relations expenses in the case at hand while it was pending before the district judge..." *Id.*

While this court has acknowledged on several occasions that the public interest is piqued by

---

[16]Defendants claim the time is actually 17.7 hours. However, as noted below, the block billing practice of Plaintiffs' counsel means that counsel did not spend the entirety of the time contained in the entry devoted to media relations. Yet, as explained at the conclusion of this section, for ease of administration, the court has charged against the Plaintiffs, the full 16.5 hours that this court calculated as related in some way to media relations.

this case, the court does not conclude that the time spent by plaintiffs counsel in "pumping up" the public interest is compensable. Accordingly, this time is disallowed and Attorney Eric Lewis's hours will be reduced by 16.5 hours.[17]

### 6.      Time Spent on Motion Practice in the District Court

Defendants also object to the 45.35 hours billed for the filing of a motion for a default judgment, and resisting the motions to set aside those judgments; the 250 hours Plaintiffs counsel logged on the first motion for summary judgment as well as the 196 hours on the second motion for summary judgment filed after the case was remanded. All told, these hours amount to 491.35 hours or 13% of the total fees requested.

As this court has already acknowledged, this case was not a run-of-the-mill case but, even so, allowing nearly eleven complete workweeks on two different rounds of summary judgment briefing appears, at first glance, unreasonable. However, a review of the record, demonstrates to the undersigned that this time was all reasonably expended by counsel. This case has generated multiple rounds of briefing on the merits and various orders of this court requesting supplemental briefing. In addition, after the first round of summary judgment motions (cross-motions) were filed, the Defendants filed a Motion to Disqualify Plaintiff's counsel Neal Lewis, a Supplemental Motion for Summary Judgment, as well as two motions to strike evidence all of which created additional research and briefing for the Plaintiffs. Plaintiffs' counsel coordinated their efforts in many of their filings which was helpful to streamline the issues for the court and which reduced the total time

---

[17]The time entries which appear to indicate some sort of press/media involvement are part of a larger entry. For ease of administration and because the time denied amounts to so little in comparison with the total fees sought, the court has simply denied all 16.5 hours as non-compensable media time.

required for preparation and review of the record by counsel.

As for the second round of summary judgment briefs, these focused on issues different from the original summary judgment proceedings in that much of the law had been clarified by the Seventh Circuit so the issues were "intensely factual" rather than "intensely legal."  Thus, the focus shifted to a fact intensive case which generated several more motions to strike submissions and led to the court's acceptance of 6 supplemental filings from the parties (4 from plaintiffs and 2 from defendants) and  two telephone conferences related to the filings.  Further, the parties briefed Motions to Strike related to expert opinions proffered by the Defendants, all of which accounts for plaintiffs' counsel's time expenditures. Given all of this, the court concludes that the hours spent were reasonable and shall not reduce the hours billed relating to these motions.

### 7.    Time Spent on Seventh Circuit Briefs/Preparation for Oral Argument

Defendants also challenge the time spent researching, drafting appellate briefs and preparing for oral argument on appeal, a total of 457.55 hours by counsel.  Defendants assert that for counsel to spend  nearly 3 months of billable time between them to draft an appeal after having conducted extensive summary judgment proceedings in the district court is clearly excessive.  This court agrees.  The court is cognizant that an appeal requires a different analysis from that at the summary judgment stage and appellate briefs are much more time consuming than ordinary briefs.  Certainly, the hours expended here, even considering the issues presented, the success of the plaintiff on appeal and the analysis that was undertaken, cannot be justified.  The court has reviewed the docket for the appellate case and there is nothing reflected in the docket entries that would justify the extensive time expenditures on appeal in this case.  But for a supplemental brief filed ordered by the Seventh

Circuit after the amicus brief was submitted by the EPA, there appears to be nothing substantially[18] out of the ordinary on appeal to justify the time expenditures. Accordingly, the court shall limit the total number of hours claimed to 250 hours (a reduction of 207.55 hours), the same amount expended on the extensive summary judgment proceedings. The difference is to be divided equally between lead counsel.

In addition, it appears that all of the time submitted by Matthew Hohman (9.5 hours for a total of $1,633.50) relates to the Seventh Circuit appeal. Plaintiffs have provided no explanation as to why Attorney Hohman was consulted for the appeal. The time entries reveal that Attorney Hohman spent his time reviewing briefs and assembling the filings. In light of the time already allowed for the appeal, the court concludes that none of the time spent by Attorney Hohman was reasonable or necessary to the litigation.

**8.      Time Spent on the Fee Petition**

Case law supports the general proposition that time expended in preparing and litigating the fee petition may be included in a fee award as long as the time is reasonable. *See Trustees of Chicago Plastering Institute Pension Trust v. Cork Plastering, Inc.* 2008 WL 728897, 6 (N.D.Ill.,2008). Indeed, when a prevailing party is forced to litigate to obtain a fee award, a component of that award ay include a reasonable fee for the time expended in preparing and litigating the fee petition. In deciding what amount of fees to award for litigating the fee issue, a court must consider whether the time expended on the  fee petition was reasonable. *Batt v. Micro Warehouse, Inc.,* 241 F.3d 891, 894 (7th Cir.2001); *Spegon v. Catholic Bishop of Chicago,* 175 F.3d

---

[18]Due to the death of one of the Plaintiffs, Counsel did have to file a notice relating to plaintiff's death as well as a supplement to the notice as ordered by the Seventh Circuit.

544, 554 (7th Cir.1999). One factor in determining the reasonableness of the hours spent on the fee petition is "the comparison between the hours spent on the merits and the hours spent on the fee petitions." *Batt,* 241 F.3d at 894.

Plaintiffs counsel have billed a combined 127.70 hours (3 weeks of time) on their original fee petition which encompasses the beginning of litigation in 2000 through October 26, 2006.  The court acknowledges that the petition itself was not simply an ordinary one;  because final judgment has not been entered Plaintiffs had to prove an entitlement to interim fees which clearly played a part in the hours required to prepare the petition.  Even considering the fact that the petition encompassed six years of litigation, the hours plaintiffs' counsel have spent to justify their million dollar request for fees is not on its face reasonable.  As noted at the outset of this Order, although the fee petition has spawned its own round of mini-litigation, the amount billed here, encompasses only the filing and assembling of the fee petition;  no time is billed (yet) for hours spent on responsive briefs, supplemental filings, or settlement discussions.  In theory at least, the actual billing records should have been kept regularly throughout the course of the litigation and thus, for counsel to spend three weeks on a single brief in support of their petition, is unreasonable.  Accordingly, the court shall reduce the hours spent on this fee petition by 40% (51.08 hours) to be divided equally by Messrs Lewis.

### 9.    Time Spent on Communications Between/Among Counsel

Next, the Defendants object to the time spent between Messrs Lewis in communications with one another.   Defendants acknowledge, as they must given that they employ multiple lawyers on their side, that there is nothing unusual or inappropriate about having two or more attorneys working on a case. "The use of more than one lawyer is common in legal practice. Consultation among

lawyers insures that they do not overlook significant facts or injuries." *Bohen v. City of East Chicago,* 666 F.Supp. 154, 157 (N.D.Ind.1987) (Easterbrook, C.J., sitting by designation at the district court level). Where Defendants' agreement ends is with the 271.5 hours attributable to Atty Neal Lewis and the presumed[19] equivalent time attributable to Eric Lewis spent in consultation which the Defendants argue is excessive "since a paying client would balk at paying for this time." From this court's calculation, this time is the equivalent of 14.6 percent of the total time sought in the petition. When viewed from this perspective, it does not seem excessive that the two lead counsel would communicate with each other, over the course of six years in litigation, 14% of the time. More importantly, in this litigation, lead counsel (who represented different clients) often joined their resources in the filing of briefs and communications to the Court. It makes sense, then that lead counsel would communicate regularly with one another. Accordingly, the court does not reduce any of this time.

### 10.    Time Spent on Pre-Complaint Investigation

Defendants also object to the "extraordinary" number of hours lead counsel spent investigating, researching, and gathering information prior to ever filing a complaint in this action. By the court's computation, attorney Eric Lewis spent nearly 83.3 hours pre-complaint and attorney Neal Lewis spent 245 hours[20] on the case prior to its filing. Plaintiffs contend, however, that because a CWA suit cannot be filed without a CWA notice prepared and served prior to filing of a complaint, all this time was all well-spent. Moreover, Plaintiffs argue that the investigation that

---

[19]Defendants contend that it is impossible to determine from Eric Lewis' bills an actual number of hours spent in conferences with Neal Lewis but presumptively it is the same as Neal Lewis since they were corresponding or conferencing with each other.

[20]These hours exclude time spent on drafting the complaint in this cause.

permitted them to comply with their obligations under Fed.R.Civ.P. 11.

Certainly counsel has a duty to familiarize themselves with the case before going forward. Thus certain pre-complaint activities are necessary and, to the extent that they are reasonable, are entitled to compensation. *See Webb v. Board of Educ. of Dyer County, Tenn.,* 471 U.S. 234, 243, 105 S.Ct. 1923, 85 L.Ed.2d 233 (1985); *In re General Motors Corp.,* 110 F.3d 1003, 1024 (4th Cir.1997). In this case, lead counsel's pre-Complaint investigation consisted primarily of: (1) photographing and videotaping the river conditions (including aerial photography; (2) on site investigations of the Fawn River; (3) telephone conferences to co-counsel; (4) correspondence; (5) reviewing expert reports; (6) pursuing settlement discussions; (7) research on clams, mussels, river surveys, etc. and (8) legal research. In addition, in this case the Plaintiffs were required to comply with certain notice requirements of the CWA prior to bringing their citizen-suit under those provisions. In other portions of this Order, the court has reduced time spent in the pre-complaint stage (such as where counsel spent time "on river") and thus, the court shall not further reduce these hours.

### B.      Reasonable Hourly Rate

After determining the number of hours "reasonably expended," the Court must now determine a "reasonable hourly rate." *Spegon v. The Catholic Bishop of Chicago,* 175 F.3d 544, 554-55 (7th Cir.1999) (citing *Hensley,* 461 U.S. at 433). The determination of an attorney's "reasonable hourly rate" should be based on the "market rate" for the services rendered. *Id.* (citing *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205,* 90 F.3d 1307, 1310 (7th Cir.1996)). "An attorney's market rate is the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." *Id.* at 555 (internal citations omitted). The burden of proving the market rate is on the fee applicant; however, once the attorney

26

provides evidence establishing his market rate, the burden shifts to the defendant to demonstrate why a lower rate should be awarded. *Id.* at 554-55.

If the court cannot determine the attorney's actual billing rate because the attorney accepts cases on contingency fee bases and has no fee-paying clients, the court should look to the next best evidence of the attorney's market rate: rates similarly experienced attorneys in the community charge paying clients for similar work and evidence of fee awards the attorney has received in similar cases. *Spegon,* 175 F.3d at 555. Specifically, an attorney who maintains a contingent fee practice should submit affidavits from similarly experienced attorneys attesting to the rates they charge paying clients for similar work. *Small v. Richard Wolf Med. Instruments Corp.,* 264 F.3d 702, 707 (7th Cir.2001). "An attorney's self-serving affidavit alone cannot satisfy the plaintiff's burden of establishing the market rate for that attorney's services." *Spegon,* 175 F.3d at 556 (citing *Blum v. Stenson,* 465 U.S. 886, 895 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)). Moreover, "while hourly rates awarded to counsel in similar cases are evidence of an attorney's market rate, each court should certainly arrive at its own determination as to a proper fee." *Id.* at 557 (citing *People Who Care,* 90 F.3d at 1312).

In this case, Plaintiffs assert the following hourly rates for the different attorneys that have provided services on the Plaintiffs' behalf: Eric Lewis, $347.50; Neal Lewis, $330; Various Attorneys of Warner, Norcross & Judd law firm $105-$290/hour; and Matt Hohman, $165/hour. Along with the proposed hourly rates above, the Plaintiffs have submitted affidavits from each of their attorneys indicating that attorneys level of experience and areas of expertise.[21]   In further

---

[21]Attorney Eric Lewis is a graduate of Valparaiso University School of Law and has practiced law since 1979.  He is a longtime partner with the Muskegon, MI firm of McCroskey, Feldman, Cochrane, & Brock, P.L.C.  Attorney Eric Lewis is.an AV rated lawyer by Martindale Hubbell  and has

support of the rates for lead counsel Eric and Neal Lewis, Plaintiffs submit the affidavit of Randall Brown, a local attorney in the firm of Barnes & Thornburg, LLP.  Attorney Brown avers that he has 16 years experience practicing law (the same as Attorney Neal Lewis) and he is familiar with the facts of this case.  He further opines that the case required "the skills of high caliber litigators and that Messrs. Neal Lewis and Eric Lewis have provided high caliber legal services."  Attorney Brown then indicates that he typically renders services in the amount of  $330/hour and that a rate of between $330 and $365/hour is the reasonable market rate for Eric Lewis.

This said, both lead Plaintiffs' attorneys (i.e. Messrs Lewis) are, by their own admission, primarily contingent fee lawyers.  However, in response to Defendants' discovery requests, Defendants present evidence that Attorney Neal Lewis has handled numerous matters on a non-contingency basis at a rate of $175 per hour and claimed a rate of $200 per hour in the Noble Circuit Court.  This rate, Defendants point out, is half the rate that Neal Lewis is seeking in the present litigation.  Further, Defendants submit an affidavit from Frank Gray, a veteran attorney having practiced law for 38 years in Fort Wayne and who has been named Indiana Super Lawyer and one of "The Best Lawyers in America" for several years.  Attorney Gray indicates that a reasonable and

---

developed, in recent years, a specialty in environmental cases.

     Attorney Neal Lewis is a magna cum laude graduate of Indiana University School of Law and has been practicing law since 1990.  Attorney Neal Lewis has represented clients in a number of complex litigation matters including class actions, labor disputes, personal injury disputes, product liability disputes, insurance disputes and environmental litigation.

     Attorney Matt Hohman had four years experience at the time he rendered services on behalf of the Plaintiffs.  According to his affidavit, this hourly rate was his customary billing rate for an associate attorney with four years experience at his law firm in 2002.

     The various attorneys from Warner, Norcross & Judd ranged in experience and years of practice from 38 years in practice to a few years in practice.  Their billing rates as reflected in the affidavits reflect this range.

typical hourly rate in the Fort Wayne market for the years of 1998 - present ranges from $195 an hour to $235 an hour. Mr. Gray further represents that these were his standard hourly rates and they were typical rates of Fort Wayne litigation attorneys with skills, reputation, and years of experience similar to his own.

Having reviewed all of the filings it is clear to the undersigned that neither of the parties recommendations as to the "reasonable" market rate is warranted. In calculating the court is "entitled to rely upon its own knowledge of attorney's fees in its surrounding areas in arriving at a reasonable hourly rate." *Andrade v. Jamestown Housing Authority,* 82 F.3d 1179, 1190 (1st Cir.1996). Plaintiffs' counsel does not meet its burden of showing that the hourly rates requested are the reasonable market rate, and the Court does not find that Plaintif's counsel possess such an "unusual amount of skill, the ability to emphasize with the jury, investigative abilities, or other qualities which command a premium." *Mathur v. Bd. of Trs. of S. Ill. Univ.,* 317 F.3d 738, 743 (7th Cir.2003). Indeed, the rates suggested by the Plaintiffs are well in excess of the reasonable hourly market rates for attorneys of similar experience and expertise. In fact, the sole evidence of reasonableness that Plaintiffs have provided comes from an attorney at one of Indiana's largest law firms (a firm that provided services to the Plaintiffs for which reimbursement is presently sought, no less), rather than a firm of similar size and scope of practice to their own attorneys. In making findings with respect to the proper hourly rate, the court should look to fees charged by attorneys comparably situated to those representing the movant. "Thus, if the movant is represented by a small or medium-sized firm, the appropriate rates are those typically charged by such firms, whereas a movant may obtain higher compensation rates if represented by a large urban firm, since such firms typically charge more per hour to cover a higher overhead." *McGhee v. Apple-Metro, Inc.,* 2005 WL

1355105, 2 (S.D.N.Y.,2005); but see *O'Sullivan v. City of Chicago,* 484 F.Supp.2d 829, 839

(N.D.Ill.,2007) ("Of course, the fact that large law firms generally charge rates higher than those of

small firms (or sole practitioners) does not mean that a particular rate is unreasonable when charged

by lawyers from small firms or that a lower rate is automatically reasonable."). Regardless, the rate

sought here is well in excess of the rates Messrs Lewis charge hourly clients and well in excess of

the rates of similar practitioners in the Fort Wayne region.

This said, however, the rates suggested by Defendants, are too low, as the Court does believe

that this case involved complex litigation and requires more expertise than the average case before

this court. Moreover, the rates suggested by Defendants do not take into account the delay in

payment over the past ten years of this litigation. In *Missouri v. Jenkins,* 491 U.S. 274, 284 (1989),

the Supreme Court held that "an adjustment for delay in payment is ... an appropriate factor in the

determination of what constitutes a reasonable attorney's fee...." See also, *Walker v. U.S. Dep't of

Housing,* 99 F.3d 761, 773 (5th Cir.1996) (a court may "calculate the lodestar using the rates

applicable when the work was done and grant a delay enhancement."). Indeed, enhancement may

be justified by significant delay in obtaining an award or by the court's finding that the attorney

assumed a substantial and provable risk of loss. *See, e.g., Jenkins,* 491 U.S. at 283-84.[22]

Accordingly, after considering all of the exhibits and affidavits attached to Plaintiffs' fee

---

[22]There appear to be two methods of adjusting the lodestar to account for a delay in payment. The district court may compensate for a delay in payment either by applying an attorney's current rates to all hours billed during the course of litigation, or by using attorney's historical rates and adding a prime rate enhancement. *See In re Washington Public Power Supply Sys. Secs. Litigation,* 19 F.3d 1291, 1305 (9th Cir.1994); *Fischel v. Equitable Life Assur. Soc'y,* 307 F.3d 997, 1010 (9th Cir.2002). This court has utilized the first of the two methods assuming a current hourly rate for Messrs Lewis of $245 for Eric Lewis and $225 for Neal Lewis and adjusting upward to account for the delay in payment. *See Cork Plastering, Inc.* 2008 WL 728897, 2 (N.D.Ill.,2008) (holding that case law within the Seventh Circuit supports paying an attorneys' fees award at current billing rates).

petition and the cases and exhibits cited by Defendants, as well as this Court's own experience with Plaintiffs' counsel during this lengthy case, and according them their deserved weight, the Court finds that the following hourly rates are reasonable for Plaintiffs' counsel (such rates include the enhancement for delay for Messrs Lewis): $285 for Eric Lewis; $265 for Neal Lewis; $165 for Matthew Hohman; and the rates as billed by the various attorneys of Warner Norcross & Judd.[23]

### C.  Summary of Lodestar Calculation

| ATTORNEY | HRLY RATE | TOTAL BILLED | MINUS REDUCTIONS | HOURS APPROVED | TOTAL |
|---|---|---|---|---|---|
| Eric Lewis | $285.00 | 1633.90 | -220.01 | 1413.89 | $402,958.65 |
| Neal Lewis | $265.00 | 1916.90 | -191.91 | 1724.99 | $457,122.35 |
| Warner Norcross & Judd | $120 - $290 | 183.40 | -$2,982.00 | | $27,657.00 |
| Matthew Hohman | $165.00 | 9.90 | -9.9 | 0 | $0.00 |
| TOTALS | | | | | $887,738.00 |

### Adjustments to the Lodestar

Once the district court reaches an amount using the lodestar determination, the Court may adjust this amount based on the extent of a Plaintiff's success. *Spegon,* 175 F.3d at 557 (citing *Hensley,* 461 U.S. at 436). The Court may consider: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the

---

[23]Defendants do not dispute that the fees sought and the hourly rates billed by Warner Norcross & Judd are reasonable and customary rates charged in the marketplace.  The court has reviewed the filings and find the various rates charged to be reasonable.

circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Blanchard v. Bergeron,* 489 U.S. 89, 91-92 (1989) (citing *Hensley,* 461 U.S. at 430).

After considering the above factors as well as the fact that this is an interim fee award, the Court does not find that any additional adjustment, either upward or downward to the lodestar determination is warranted here. The Court's analysis above in determining Plaintiff's counsel's reasonable hours and rates has already addressed and applied the additional considerations above, and thus the Court finds that the lodestar amount does not require any additional adjustment.

### III.  Costs and Expenses

In addition to reasonable attorney and expert witness fees, section 1365(d) permits the court to "award costs of litigation...." 33 U.S.C. § 1365(d). The party seeking litigation costs bears the burden of proving that its request is reasonable. *See Northeast Iowa Citizens For Clean Water v. Agriprocessors,* Inc. 489 F.Supp.2d 881, 897 (N.D.Iowa,2007)(citing *Hensley,* 461 U.S. at 437); but, as a general rule courts have held that §1365(d) should be "interpreted....broadly, allowing all expenses incurred in the course of litigation..." *Proffitt v.  Mun. Auth. of the Borough of Morrisville,* 716 F.Supp. 845, 854 (E.D.Pa.1989).   Indeed,  the costs that may be charged to losing defendants include "those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Spell v. McDaniel,* 852 F.2d 762, 771 (4th Cir.1988) (citing *Northcross v. Board of Educ. of Memphis City Schools,* 611 F.2d 624, 639 (6th Cir.1979)).   Examples of types of costs that have been charged to losing defendants include necessary court costs, travel, photocopying, postage, and computer research.

Plaintiffs have submitted several sets of itemized records of expenses (set out below) indicating various out-of-pocket expenses including fax, postage, and photocopy expenses, travel and meal expenses, witness and expert witness fees, filing fees, Westlaw expenses, court reporter fees, environmental testing fees, and miscellaneous expenses.

| Eric Lewis, Mcroskey Feldman, Cochrane and Brock, P.C. | $9,514.06 |
| Lewis & Associates Expense | $17,917.75 |
| Plaintiffs Gene and Sharon Lewis | $48,527.76 |
| Warner Firm | $1339.27 |
| Barnes & Thornburg | $784.93 |

Defendants object to numerous expenditures claiming that the overall request is inadequately supported by invoices or other evidence or reasonableness and that some of the expenses appear "out of the ordinary."

This court has reviewed the list of expenses and concludes that all of the expenses related to travel/mileage, filing fees, electronic research expenses, expert fees and court reporter fees  are reasonable and compensable. *See* e.g. *Uniroyal Goodrich Tire Co. v. Mutual Trading Corp.,* 63 F.3d 516, 526 (7th Cir.1995)(allowing recovery of reasonable electronic legal research charges); *Northeast Iowa Citizens For Clean Water v. Agriprocessors, Inc*. 489 F.Supp.2d 881, 898 (N.D.Iowa,2007) (reasonable travel and mileage requests are compensable);  *Student Pub. Interest Research Group v. Monsanto Co.,*  721 F.Supp. 604, 625 (D.N.J. ) (holding that filing fee was a reimbursable litigation cost under § 1365(d))).

Photocopy expenses are recoverable as part of the attorney's fee award as long as the per copy charge is reasonable. *See, e.g., NLFC, Inc. v. Devcom Mid-Am., Inc.,* 916 F.Supp. 751, 762 (N.D.Ill.1996). Here, the plaintiffs have submitted billing invoices for photocopies showing a per copy charge of $.10 per page.  The court concludes this is a reasonable cost per page; however, the

court is without any basis to determine whether the copies were reasonable and necessary to the litigation. The court acknowledges, however, that it is reasonable that at least some copying in the course of six (6) years of litigation occurred and was necessary to the litigation. Thus, the court shall permit the copying charges at the rate of $.10 per page when the copying was performed in-house.

However, Plaintiffs also seek reimbursement for copying expenditures paid directly by Gene and Sharon Lewis as well as outside photocopying costs incurred by Attorney Neal Lewis. The itemized list provided by plaintiffs shows only a date, the fact that copies were made, and a cost. There is no indication as to what was copied, the number of pages copied or the per page rate charged. Accordingly, the court cannot reach a conclusion as to whether these expenditures are reasonable and the same are denied. *H.J. Inc. v. Flygt Corp.,* 925 F.2d 257, 260 (8th Cir.1991) (citing *Hensley,* 461 U.S. at 434, 437 & n. 12, 103 S.Ct. 1933) ("Inadequate documentation may warrant a reduced fee.... Incomplete or imprecise billing records preclude any meaningful review by the district court...."); *Proffitt v. Mun. Auth. of the Borough of Morrisville*, 716 F.Supp. 845, 854 (E.D.Pa.1989) (denying request for out-of-pocket expenses pursuant to § 1365(d), because of poor documentation). The expenses of Gene and Sharon Lewis shall be reduced by $2,503.36. The expenses of Neal Lewis shall be reduced by $675.53.

Plaintiffs also seek reimbursement for $1,417.00 in facsimile charges, the majority of which appear to be transmittals to and from co-counsel. While the availability of facsimile technology is certainly convenient, and almost routine in law firms, it is often not reasonable since it is for the convenience of counsel rather than a necessary expense. At least one court, in reducing counsel's claimed fax expenses, recognized that "facsimile equipment is relatively inexpensive and the

marginal cost of sending a facsimile is nominal at most. ... the firm is not entitled to reimbursement for what it may charge [to its clients], but for what it reasonably spent. The firm is entitled to *its* cost, sans profit, in sending a fax." *Lang v. Reedy Creek Improvement Dist.* 1997 WL 809200 (M.D.Fla.,1997) Here, the Plaintiffs have not identified what was sent by facsimile,  nor provided any reliable information so as to permit the court to determine the reasonable cost of sending (and apparently receiving) a facsimile.  Accordingly, the court shall disallow $1,417.00 in fax charges.

Defendants object to several specific line item entries in the Plaintiffs' submissions.  With respect to Neal Lewis's claimed expenses, the following are challenged by Defendants:

| Expense Claim | Amount |
|---|---|
| Fish Finder | $145.80 |
| Forestry Supplies | $24.59 |
| Camera Supplies | $650.54 |
| Telephoto Lens + mileage to FW to purchase telephoto lens | $83.95 + $33.00 |
| Total | 937.88 |

The above expenses are denied as there is no information provided to allow the court to determine the reasonableness or the necessity of the expenditures as it relates to this litigation.

With respect to Eric Lewis's claimed expenses, the following are challenged by Defendants:

| Expense Claim | Amount |
|---|---|
| Aspen Publishers (treatise on Section 1983 claims) | $439.42 |
| Lawyers Weekly USA | $7.75 |
| Michigan Lawyers Weekly | $61.45 |
| Westlaw Charges for unpublished opinions | $304.40 |
| Total | $813.02 |

With respect to the claim for reimbursement for the Aspen Law treatise, Plaintiffs' counsel acknowledge that the treatise can be generally utilized in their practice.  Accordingly, the court shall

reduce by half the amount requested for that treatise.  As for the remainder of the charges, the court has reviewed the explanation of these costs provided by Plaintiffs in response to the Defendants objection and finds the charges are reasonable and necessary to the litigation.

Finally, Plaintiffs seek costs of $784.93 incurred by attorney Matthew Hohman of Barnes & Thornburg, LLP and $1,339.27 for the Warner Firm.  Attorney Hohman has not represented or averred that any of these costs were necessary and reasonable to the litigation nor has he presented an itemized billing statement demonstrating the specifics of the costs sought.  Accordingly, these costs are denied.[24]  Similarly, the Warner Firm, while setting forth a breakdown of the costs and claiming the expenses were necessarily incurred, has not provided any explanation as to the nature of the costs so the court can discern their reasonableness.  Thus, these costs are likewise denied.

## IV.   Summary

In sum then, the court hereby awards the following amounts as interim fees and costs:

### A.   Attorneys Fees

| ATTORNEY | HRLY RATE | TOTAL BILLED | MINUS REDUCTIONS | HOURS APPROVED | TOTAL |
|----------|-----------|--------------|------------------|----------------|-------|
| Eric Lewis | $285.00 | 1633.90 | -220.01 | 1413.89 | $402,958.65 |
| Neal Lewis | $265.00 | 1916.90 | -191.91 | 1724.99 | $457,122.35 |
| Warner Norcross & Judd | $120 - $290 | 183.40 | -$2,982.00 | | $27,657.00 |
| Matthew Hohman | $165.00 | 9.90 | -9.9 | 0 | $0.00 |
| TOTALS | | | | | $887,738.00 |

---

[24]This is consistent with this court's determination that Attorney Hohman's legal services were not reasonably incurred in this litigation.

36

**B.**     <u>Costs</u>

| | |
|---|---|
| Eric Lewis, Mcroskey Feldman, Cochrane and Brock, P.C. | $9,294.35 |
| Lewis & Associates Expense | $14,887.34 |
| Plaintiffs Gene and Sharon Lewis | $46,024.40 |
| Warner Firm | $0 |
| Barnes & Thornburg | $0 |
| TOTAL COSTS | $70,206.09 |

<u>**CONCLUSION**</u>

The Plaintiffs' Motion for Interim Fees and Costs is hereby GRANTED.  The Plaintiffs are

awarded fees in the amount of $887,738.00 and costs of $70,206.09.

Entered: This 14th day of July, 2008

s/ William C. Lee

United States District Court

37